## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Albert A. Salinas,<br><br>            Plaintiff,<br><br>v.<br><br>Dr. Sohiya Hirachen, et al.,[1]<br><br>            Defendants. | Case No. 20-cv-2245 (SRN/LIB)<br><br><br>**MEMORANDUM OPINION AND ORDER** |

Albert A. Salinas, St. Peter Regional Treatment Center, 100 Freeman Dr., St. Peter, MN 56082, Pro Se.

Anthony R. Noss, Minnesota Attorney General's Office, 445 Minnesota Street, Suite 1100, St. Paul, MN 55101, for Defendants.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on Defendants' Motion to Dismiss [Doc. No. 20] Plaintiff's complaint. Based on a review of the files, submissions, and proceedings herein, and for the reasons below, the Court **GRANTS** the motion.

## I.   BACKGROUND

### A.   The Parties

Plaintiff Albert Salinas is a civilly committed patient, housed at the St. Peter Regional Treatment Center ("SPRTC"). (Compl. [Doc. No. 1] ¶ 3.) He has named as

---

[1] Defendants have informed the Court that several of the defendants' names are misspelled in the Complaint. (*See* Defs.' Mem. in Supp. of Mot. to Dismiss ("Defs.' Mem.") [Doc. No. 23] at 2 nn.1-2.) However, for purposes of this Order, the Court will refer to the defendants by their names as pleaded in the Complaint.

defendants various SPRTC employees: Sohiya Hirachen, Saif-Uddin Mohsin, Jeannie Clark, Mike Sander, Rachel Ruiz, Kathy Harowski, Heather Otto, and Lisa Tressler (collectively, "Defendants"). (*Id.* ¶¶ 4-11.) He has sued Defendants in their official and individual capacities. (*Id.* ¶ 27.)

### B.   Salinas' Incident with Another Patient and Subsequent Transfer

On June 8, 2020, Salinas was readmitted to the Forensic Mental Health Program ("FMHP") after voluntarily returning from provisional discharge to the community. (*Id.*, Ex. C at 19-20.) His provisional discharge was revoked because he violated several terms of his provisional discharge order and "did not return to the community within the 60-day timeframe allowed under voluntary return status." (*Id.* at 16.) Upon readmission, Salinas was placed in the FMHP Forest View North unit—a "non-secure" unit. (*Id.* at 19.) Salinas alleges that he has post-traumatic stress disorder ("PTSD"). (Compl. ¶¶ 4, 15.) He further alleges that he creates art as a strategy to help manage his PTSD symptoms. (*Id.*, Ex. C at 18.)

On or about August 10, 2020, Salinas had an incident with another patient in response to that patient allegedly spreading rumors about him. (*Id.* ¶ 15.) Salinas alleges that he was experiencing a "flashback" and having a "PTSD episode" and that he told this patient that he "would defend [him]self to the fullest." (*Id.* ¶¶ 20, 24.)

After this incident, Salinas alleges that Sander put him on "unit status." (*Id.* ¶ 20.) A progress note states that Salinas was placed on "unit status" because of "his threatening behaviors" and that Sander "discussed with [Salinas] that he's to remain on the unit at this time due to the current situation until he's demonstrating and vocalizing safe and

appropriate behaviors." (*Id.*, Ex. C at 8.) According to Salinas, Sander placed on him on unit status without "telling [him] the rules and what restrictions unit status carried." (*Id.* ¶ 22.)

According to a progress note from Otto, on August 13, 2020, Salinas was transferred to the FMHP Pine Unit—a secure unit—"because it was determined that [he] could not safely be served on a non-secure unit due to ongoing concerns about his psychiatric and behavioral stability." (*Id.*, Ex. C at 15.) Otto further noted that "in the days leading up [to] this transfer, [Salinas] began targeting a peer on the unit," and that Salinas "was also noted to be verbally aggressive towards staff, agitated, and impulsive." (*Id.*) According to Salinas, being transferred to Pine Unit could lengthen his commitment by at least 18 months. (*Id.* ¶ 23.) He also alleges that he lost several privileges by virtue of being transferred to a more secure unit. (*Id.*)

### C.    Allegations as to Each Defendant

#### 1.    Sohiya Hirachen

Salinas alleges that Hirachen is the medical director of the SPRTC. (*Id.* ¶ 4.) He alleges that she was aware of his PTSD because of her position and the access she had to his medical records, that she failed to treat his PTSD, and that this failure constitutes deliberate indifference and cruel and unusual punishment under the Eighth Amendment. (*Id.* ¶ 19.) He also alleges that she "failed in her duties [due] to either indifference or incompetence." (*Id.*)

### 2.    Saif-Uddin Mohsin

Salinas brings several claims against Mohsin, his psychiatrist at the SPRTC. (*Id.* ¶¶ 5, 20.) First, he alleges that Mohsin punished him and retaliated against him in violation of the First Amendment by transferring him to Pine Unit because of his verbal response to the patient who was spreading rumors about him. (*Id.* ¶ 20.) Second, he alleges that Mohsin violated his Second Amendment "rights to protect [him]self." (*Id.*) Finally, he alleges that Mohsin violated the Eighth Amendment's prohibition on cruel and unusual punishment by transferring him to Pine Unit, where he could no longer possess his art supplies. (*Id.*)[2]

### 3.    Jeannie Clark

Salinas alleges that Clark, a registered nurse at Forest View North, violated his rights under the First Amendment because she misrepresented the statements Salinas made to another patient. (*Id.* ¶¶ 6, 21.) He further alleges that she violated the Eighth Amendment's prohibition on cruel and unusual punishment by failing to recognize or treat his PTSD. (*Id.*)

### 4.    Mike Sander

Salinas alleges that Sander, a registered nurse at Forest View North, violated several of his constitutional rights. (*Id.* ¶¶ 7, 22.) First, he alleges that Sander violated his rights under the First Amendment by misrepresenting the statements Salinas made to another patient. (*Id.* ¶ 22.) Second, he alleges that Sander violated his rights under the Second Amendment by "denying [him his] right to self protection" when he misrepresented what

---

[2] Salinas also alleges that Pine Unit is a new "admissions unit" but that he is "not a[] [new] admission." (*Id.*)

Salinas said to another patient. (*Id.*) Third, he alleges that Sander acted with deliberate indifference in violation of the Eighth Amendment by falsely stating that Salinas and the other patient charged at each other on August 10, 2020, when only the other patient charged at Salinas. (*Id.*) Fourth, he alleges that Sander violated his rights under the Fourth Amendment by placing him on "unit status" without informing him of certain restrictions attendant to being on "unit status," thereby depriving him of due process. (*Id.*)[3]

### 5.    Rachel Ruiz

According to Salinas, Ruiz, a human services support specialist at Forest View North, lied about the August 10, 2020, incident, causing him to be transferred to Pine Unit. (*Id.* ¶¶ 8, 23.)

### 6.    Kathy Harowski

Salinas alleges that Harowski, a psychologist at the SPRTC, falsely stated that Salinas threatened another patient. (*Id.* ¶¶ 9, 24.) He further alleges that she violated the Eighth Amendment's prohibition against cruel and unusual punishment by failing to address his PTSD and by allowing him to get "punished for it" by being transferred to Pine Unit. (*Id.* ¶ 24.)

### 7.    Heather Otto

Salinas alleges that Otto, a social worker at the SPRTC, falsely stated that he threatened another patient, which, according to Salinas, will cause him to "lose [his] ability

---

[3] Although Salinas references the Fourth Amendment, he appears to be arguing that Sander deprived him of due process in violation of the Fourteenth Amendment.

to gain [his] freedom." (*Id.* ¶¶ 10, 25.) He also alleges that Otto's actions infringed on his rights under the Second Amendment. (*Id.* ¶ 25.)

### 8.    Lisa Tressler

Salinas alleges that Tressler, a registered nurse at Forest View North, violated his "Fourth Amendment right [to] due process" by not informing him of when he was placed on "unit status," what time he would be removed from "unit status," and the restrictions attendant to being on "unit status." (*Id.* ¶¶ 11, 26.)[4]

## II.    PROCEDURAL HISTORY

On October 28, 2020, Salinas commenced this action by filing a Complaint [Doc. No. 1]. Subsequently, he filed certain letters that the Court will construe as amendments to the Complaint. (*See* Pl.'s Ltr. to Ct. [Doc. No. 4]; Pl.'s Exs. [Doc. No. 6].)[5] In this action, Salinas seeks injunctive relief,[6] costs, compensatory and punitive damages, and any other relief the court deems just, proper, and equitable. (*Id.* at 29-31.) Defendants move the Court to dismiss the Complaint pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure.

---

[4] Similar to his allegations as to Sander, Salinas appears to be arguing that Tressler violated his due process rights under the Fourteenth Amendment.

[5] These filings generally consist of additional progress notes from Salinas' providers.

[6] Specifically, he requests that the Court issue an order: (1) directing Salinas' return to the "transition program"; (2) restoring his "level" from "yellow" to "blue"; (3) striking from his records that he threatened a patient on August 10, 2020; and (4) enjoining Defendants from saying that he threatened a patient on August 10, 2020.

### III.    DISCUSSION

#### A.    Standard of Review

When considering a motion to dismiss under Rule 12(b)(6), the Court accepts the facts alleged in the complaint as true, and views those allegations in the light most favorable to the plaintiff. *Hager v. Arkansas Dep't of Health*, 735 F.3d 1009, 1013 (8th Cir. 2013). However, the Court need not accept as true wholly conclusory allegations or legal conclusions couched as factual allegations. *Id.* To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555.

Where the defendant argues that the facts alleged in the complaint fail to establish subject matter jurisdiction under Rule 12(b)(1)—as the Defendants do here—the plaintiff is afforded similar safeguards as in a Rule 12(b)(6) motion. *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). Namely, the Court must "accept as true all factual allegations in the complaint, giving no effect to conclusory allegations of law," and determine whether the plaintiff's alleged facts "affirmatively and plausibly suggest" that jurisdiction exists. *Stalley v. Catholic Health Initiatives*, 509 F.3d 517, 521 (8th Cir. 2007). The Court's review is limited to the face of the pleadings. *Branson Label, Inc. v. City of Branson*, 793 F.3d 910, 914 (8th Cir. 2015).

When considering a motion to dismiss under Rule 12(b)(6), "the court generally must ignore materials outside the pleadings." *Porous Media Corp. v. Pall Corp.*, 186 F.3d

1077, 1079 (8th Cir. 1999). Courts may, however, "consider some materials that are part of the public record or do not contradict the complaint as well as materials that are necessarily embraced by the pleadings." *Id.* (quotations and citation omitted); *see Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011) ("In addressing a motion to dismiss, the court may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record."). "[D]ocuments 'necessarily embraced by the complaint' are not matters outside the pleading," *Enervations, Inc. v. Minn. Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004), and courts have discretion "to determine whether or not to accept any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion." *Stahl v. United States Dep't of Agric.*, 327 F.3d 697, 701 (8th Cir. 2003).

A pro se complaint must be liberally construed, but it must still contain sufficient factual allegations to support the claims. *Gerstner v. Sebig, LLC*, 386 Fed. App'x 573, 575 (8th Cir. 2010) (citing *Whitson v. Stone Cty. Jail*, 602 F.3d 920, 922 n.1 (8th Cir. 2010)).

### B.     Analysis

The Court will divide its analysis into four parts. First, the Court will address the issue of Eleventh Amendment immunity. Second, the Court will consider whether Salinas fails to state: (1) a First Amendment retaliation claim against Mohsin, Clark, Sander, Ruiz, Harowski, and Otto; (2) a Second Amendment claim against Mohsin, Sander, and Otto; (3) an Eighth Amendment claim against Hirachen, Mohsin, Clark, Sander, and Harowski; and (4) a Fourteenth Amendment claim against Hirachen, Mohsin, Clark, Sander, Tressler, and Harowski. Third, the Court will address Salinas' state law medical malpractice claim

against Hirachen. Fourth, and finally, the Court will address whether qualified immunity bars Salinas' claims.[7]

### 1.     Eleventh Amendment Immunity

As noted, Salinas filed this lawsuit against Defendants in both their official and individual capacities. In addition to requesting injunctive relief, Salinas requests various types of money damages, including compensatory and punitive damages.

"The Eleventh Amendment immunizes an unconsenting State from damage actions brought in federal court, except when Congress has abrogated that immunity for a particular federal cause of action." *Hadley v. N. Arkansas Cmty. Tech. Coll.*, 76 F.3d 1437, 1438 (8th Cir. 1996). Congress did not abrogate Eleventh Amendment immunity in § 1983 cases. *Id.* Consequently, "the Eleventh Amendment prohibits recovery of damages under 42 U.S.C. § 1983 against a state officer in his or her official capacity." *Flores v. Moser*, No. 16-cv-1860 (ADM/KMM), 2019 WL 2016789, at *4 (D. Minn. Jan. 7, 2019) (adopting report and recommendation) (collecting authorities). There is no indication in the record that the State of Minnesota has waived its Eleventh Amendment immunity in this case. Therefore, Salinas' claims for money damages against the Defendants—who are various state employees of the SPRTC—in their official capacities are barred by the Eleventh Amendment. *See Rousseau v. Stevens*, No. 16-cv-2007 (DSD/TNL), 2016 U.S. Dist. LEXIS 107129, at *3-4 (D. Minn. July 26, 2016), *report and recommendation adopted*,

---

[7] Salinas does not specify in his Complaint that he is asserting his constitutional claims through 42 U.S.C. § 1983. However, the Court will construe his constitutional claims as if they are brought pursuant to § 1983.

2016 U.S. Dist. LEXIS 105883 (D. Minn. Aug. 10, 2016) (holding that SPRTC official is state official entitled to Eleventh Amendment immunity).

Moreover, the Eleventh Amendment bars federal court jurisdiction over state claims to which a state has not consented. *Cooper v. St. Cloud State Univ.*, 226 F.3d 964, 968 (8th Cir. 2000) (citation omitted). There is no indication in the record that the State of Minnesota waived its Eleventh Amendment immunity as to Salinas' purported medical malpractice claim against Hirachen. *See Hoeffner v. Univ. of Minnesota*, 948 F. Supp. 1380, 1392 (D. Minn. 1996). Therefore, the Court lacks jurisdiction over this claim to the extent Salinas brings it against Hirachen in her official capacity.

### 2.      First Amendment Retaliation Claim

First, the Court considers Salinas' claim that Mohsin, Clark, Sander, Ruiz, Harowski, and Otto violated his First Amendment rights by transferring him to Pine Unit in retaliation for his remarks during the incident on August 10, 2020. To state a claim for retaliation in violation of the First Amendment, a plaintiff must allege that: "(1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004). "[C]ivilly committed persons retain their First Amendment rights to exercise the freedom of speech and to seek redress of grievances." *Evenstad v. Herberg*, 994 F. Supp. 2d 995, 1001 (D. Minn. 2014) (citing *Revels*, 382 F.3d at 876).

Defendants do not dispute that Salinas plausibly alleged that he suffered an adverse action that would chill a person of ordinary firmness (*i.e.*, being transferred from a non-secure unit to Pine Unit, a secure unit). However, they contend that he failed to allege sufficient facts to support the other two elements of the claim.

First, they argue that Salinas' speech at issue is not protected under the First Amendment because it constitutes "fighting words." (Defs.' Mem. at 12-13.) "Fighting words"—those words "which by their very utterance inflict injury or tend to incite an immediate breach of the peace"—are not protected by the First Amendment. *Garcia v. City of New Hope*, 984 F.3d 655, 672 (8th Cir. 2021) (quoting *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572 (1942)). Put differently, "fighting words" are "words that are 'likely to cause an average addressee to fight.'" *Buffkins v. Omaha*, 922 F.2d 465, 472 (8th Cir. 1990) (quoting *Chaplinsky*, 315 U.S. at 573).

Here, Defendants argue that Salinas' statement that he "would defend [him]self to the fullest" understandably raised a security concern and constituted fighting words. (*Id.*) They also point to Mohsin's progress note from August 12, 2020, in which he wrote that Salinas said "I will make an example out of him," to give context to the incident. (*Id.*) In response, Salinas argues that he only told the other patient that he "would defend [him]self to the fullest" and that these are not "fighting words." (*See* Compl. ¶ 20.) He alleges throughout his Complaint that various defendants falsely stated in progress notes that he made other statements that raised a security concern. (*See id.* ¶ 14.)

Even accepting Salinas' allegations as true, as the Court must at this stage, the Court finds that Salinas has not plausibly alleged that his speech at issue is protected.

Experiencing a "PTSD episode," as Salinas alleges, in the context of a facility housing sex offenders in close quarters, the statement that Salinas "would defend [him]self to the fullest" plausibly raises a concern among staff that he might "inflict injury" or "incite an immediate breach of the peace." *See Bell v. Wolfish*, 441 U.S. 520, 547 (1979) (explaining that "[p]rison officials must be free to take appropriate action to ensure the safety of inmates"); *Revels v. Vincenz*, 382 F.3d 870, 874 (8th Cir. 2004) ("Although an involuntarily committed patient of a state hospital is not a prisoner per se, his confinement is subject to the same safety and security concerns as that of a prisoner."). Accordingly, Salinas has failed to state a claim for First Amendment retaliation.

### 3.   Second Amendment Claim

Next, Salinas argues that Mohsin, Sander, and Otto violated his right to self-protection under the Second Amendment. The Second Amendment "protects the right to keep and bear arms for the purpose of self-defense." *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 749-50 (2010) (citing *District of Columbia v. Heller*, 554 U.S. 570 (2008)). However, none of Salinas' allegations relate to keeping or bearing arms for self-defense. Therefore, he fails to state a claim under the Second Amendment.

### 4.   Eighth Amendment Claim

Salinas also contends that Defendants violated his right to be free from cruel and unusual punishment under the Eighth Amendment. The Eighth Amendment's prohibition against cruel and unusual punishment applies to the conditions of prisoners' confinement. *Ambrose v. Young*, 474 F.3d 1070, 1075 (8th Cir. 2007). "[B]ecause an involuntarily committed psychiatric patient is confined for treatment rather than incarcerated for the

purpose of punishment following conviction, the Eighth Amendment does not apply" to patients in Salinas' position. *Revels v. Vincenz*, 382 F.3d 870, 874 (8th Cir. 2004) (citations omitted). Consequently, he fails to state a claim under the Eighth Amendment. *See Semler v. Ludeman*, No. 09-cv-0732 (ADM/SRN), 2010 WL 145275, at *22 (D. Minn. Jan. 8, 2010) (adopting report and recommendation) (applying *Revels* in holding that "the Eighth Amendment does not apply to civilly committed persons at the St. Peter Regional Treatment Center"). The rights of patients like Salinas "more appropriately arise under the Fourteenth Amendment." *Revels*, 382 F.3d at 874.

### 5. Fourteenth Amendment Claims

#### a. Failure to Treat PTSD with Deliberate Indifference

First, the Court addresses Salinas' claim that Hirachen, Mohsin, Clark, Sander, and Harowski violated the Fourteenth Amendment by failing to treat his PTSD. Courts apply the Eighth Amendment's deliberate indifference standard to a civilly committed patient's Fourteenth Amendment claim for deficient medical care. *Mead v. Palmer*, 794 F.3d 932, 936 (8th Cir. 2015) (citations omitted). To prevail on a deliberate indifference claim at this stage, a plaintiff must allege facts plausibly showing that: "(1) he suffered from objectively serious medical needs, and (2) the defendants actually knew of, but deliberately disregarded, those needs." *Id.*

The first prong of the deliberate indifference analysis is an objective inquiry, and is satisfied if the plaintiff's medical need "is supported by medical evidence, such as a physician's diagnosis, or is 'so obvious that even a layperson would easily recognize the necessity for a doctor's attention.'" *Ryan v. Armstrong*, 850 F.3d 419, 425 (8th Cir. 2017)

(quoting *Bailey v. Feltmann*, 810 F.3d 589, 594 (8th Cir. 2016)). Here, Salinas alleges that he has a diagnosis of PTSD. However, regardless of whether this diagnosis rises to the level of an objectively serious medical need, his claim fails because he does not allege sufficient facts supporting the second prong—that defendants actually knew of, but deliberately disregarded, those needs.

The second prong of the deliberate indifference analysis is a subjective inquiry, and imposes "an extremely high standard that requires a mental state of 'more … than gross negligence.'" *Saylor v. Nebraska*, 812 F.3d 637, 644 (8th Cir. 2016), *as amended* (Mar. 4, 2016) (quoting *Fourte v. Faulkner Cty.*, 746 F.3d 384, 387 (8th Cir. 2014)). This standard is satisfied only by allegations of "a mental state akin to criminal recklessness." *Ryan*, 850 F.3d at 425 (citing *Thompson v. King*, 730 F.3d 742, 746-47 (8th Cir. 2013)). A civilly committed person has "no constitutional right to receive a particular or requested course of treatment, and … doctors remain free to exercise their independent medical judgment." *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (citation omitted).

First, Salinas alleges that Hirachen acted with deliberate indifference because she was aware of his PTSD—because she is the medical director at SPRTC and had access to his medical records—and yet she failed to treat him. (Compl. ¶ 19.) His claim fails for two reasons. First, he does not allege that Hirachen was involved in any actionable conduct, and Hirachen "cannot be held personally liable under § 1983 merely because she has a supervisory role." *Flores v. Moser*, No. 16-cv-1860 (ADM/KMM), 2019 U.S. Dist. LEXIS 36952, at *23 (D. Minn. Jan. 7, 2019) ("To establish personal liability of the supervisory defendants, [the plaintiff] must allege specific facts of personal involvement in, or direct

14

responsibility for, a deprivation of his constitutional rights." (citing *Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007))). Second, Salinas' allegations are speculative and conclusory. He merely alleges that Hirachen "[cannot] say she did not know" about his PTSD because his case file includes a PTSD diagnosis and she is the medical director of SPRTC. (*See* Compl. ¶ 19.) But he does not plausibly allege that she actually knew of his PTSD diagnosis and then deliberately disregarded it.

Next, Salinas alleges that Mohsin knew he had PTSD but sent him "to the Pine Unit where [patients] are not allowed art materials," which Salinas alleges he needs for "therapeutic purposes." (*See* Compl. ¶ 20.) Salinas' claim fails as to Mohsin because he does not plausibly allege that the lack of art materials "created an excessive risk" to his health. *See Dulany*, 132 F.3d at 1239; *Sorenson v. Minnesota Dep't of Hum. Servs.*, No. 14-cv-4193 (ADM/LIB), 2015 WL 251720, at *11-12 (D. Minn. Jan. 20, 2015). Instead, he alleges only that he was not allowed "a particular or requested course of treatment," which is insufficient to state a claim for deficient medical care. *See Sorenson*, 2015 WL 251720, at *11 (quoting *Dulany*, 132 F.3d at 1239).

Finally, he alleges that Clark, Sander, and Harowski acted with deliberate indifference when: (1) Clark failed to "recogniz[e] or treat[]" his PTSD, (Compl. ¶ 21); (2) Sander falsely stated that Salinas and another patient charged at each other on August 10, 2020, when only the other patient charged Salinas, (*id.* ¶ 22); and (3) Harowski failed to address his PTSD and allowed him to get "punished for it" by being transferred to Pine Unit, (*id.* ¶ 24). Even liberally construing Salinas' allegations, he simply fails to state a claim against these three individuals because his allegations are speculative and

conclusory. Further, he does not allege facts showing that any of these defendants knew that his PTSD "created an excessive risk" to his health and then failed to act on that knowledge with deliberate indifference. *See Dulany*, 132 F.3d at 1239.

### b.   Punitive Conditions of Confinement

Civilly committed individuals may not "be punished without running afoul of the Fourteenth Amendment." *Karsjens v. Lourey*, 988 F.3d 1047, 1052 (8th Cir. 2021). "In analyzing whether a condition of confinement is punitive, courts 'decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose.'" *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 538 (1979)). Unless a civilly committed individual can show "an expressed intent to punish," "that determination generally will turn on whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation" to the alternative purpose. *Id.* (quoting *Bell*, 441 U.S. at 538) (alteration in original) (internal quotation marks omitted).

In Defendants' view, Salinas fails to state a claim because he does not plausibly allege: (1) an expressed intent to punish; (2) that his transfer to Pine Unit was not rationally related to a legitimate government purpose; and (3) that his transfer was excessive relative to that government purpose. (Defs.' Mem. at 20-21.) According to Salinas, his transfer to Pine Unit "had to be for punishment and not stabilization" because: (1) Pine Unit is a new "admission unit" and he is not a new admission; and (2) he is an artist and cannot have his art materials in Pine Unit. (Compl. ¶ 14.)

Here, Salinas has not alleged facts plausibly showing an expressed intent to punish or that his transfer to Pine Unit was not rationally related to a legitimate government purpose. The government's legitimate objectives "include maintaining order and security," and transferring Salinas to another unit after the August 10, 2020 incident is reasonably related to those objectives. *Benson v. Piper*, No. 17-cv-266 (DWF/TNL), 2019 U.S. Dist. LEXIS 49245, at *57 (D. Minn. Jan. 25, 2019) (citing *Bell*, 441 U.S. at 540). Consequently, his allegations that his transfer was punitive because Pine Unit is an "admission unit" and he cannot have art materials there simply do not state a plausible claim for relief.

### c.     Procedural Due Process Claim

Next, Salinas appears to bring a procedural due process claim against Sander and Tressler. Courts review procedural due process claims in two steps. *Senty-Haugen v. Goodno*, 462 F.3d 876, 886 (8th Cir. 2006). First, the court considers whether the plaintiff has alleged sufficient facts to establish that he was deprived of a protected liberty or property interest. *Id.* Second, if such an interest is implicated, the court considers whether he has alleged facts showing that the procedures used to interfere with that interest were constitutionally insufficient. *Id.* (citation omitted). Notice of the factual basis for the deprivation and a fair opportunity for rebuttal are the most important mechanisms in ensuring due process was provided. *Id.* at 888 (citation omitted).

According to Salinas, Sander deprived him of due process by placing him on "unit status" without "telling [him] the rules and what restrictions unit status carried." (Compl. ¶ 22.) He also alleges that Tressler deprived him of due process by not informing him of when he was placed on "unit status," what time he would be removed from "unit status,"

and the restrictions attendant to being on "unit status."  (*Id.* ¶ 26.) In response, Sander and Tressler contend that Salinas fails to state a claim because his placement on "unit status" for approximately one day does not infringe on a protected liberty interest, and even if it did, the exhibits attached to the Complaint show that Sander notified him of the reason for his placement on "unit status." (Defs.' Mem. at 23-24.)

Here, Salinas fails to allege sufficient facts to support either element of a procedural due process claim. First, being placed on "unit status" for approximately one day does not implicate a protected liberty interest. *See, e.g.*, *Linehan v. Johnston*, No. 18-cv-3483 (WMW/KMM), 2019 WL 6879366, at *2-3 (D. Minn. Nov. 26, 2019), *report and recommendation adopted*, 2019 WL 6873984 (D. Minn. Dec. 17, 2019) (concluding that civilly committed person's "placement on restricted status for a brief period" of eight days does not implicate any liberty interest). Second, even if Salinas did plausibly allege the existence of a protected liberty interest, he does not allege facts showing that the procedures used to interfere with that interest were constitutionally insufficient. Indeed, the exhibits Salinas attached to his Complaint show that Sander notified him of the reason for his placement on "unit status," which Salinas does not dispute. (*See* Compl., Ex. C at 8.)

### d.    Equal Protection Claim

Construing the Complaint liberally, Salinas appears to allege that his right to equal protection was violated because, after the August 10, 2020 incident, he was sent to a "higher security" living unit while the other patient involved was not. (Compl. ¶ 26.)

The U.S. Supreme Court has recognized equal protection claims for a "class of one," where the plaintiff has not alleged membership in a suspect class but alleges that he or she

has been "intentionally treated differently from others similarly situated and there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam); *see also Robbins v. Becker*, 794 F.3d 988, 995 (8th Cir. 2015).

Salinas fails to state an equal protection claim for several reasons. First, he simply does not allege that he was intentionally treated differently, nor that there was no rational basis for the alleged difference in treatment. *See also Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) ("Although it is to be liberally construed, a pro se complaint must contain specific facts supporting its conclusions."). Further, he fails to allege who is responsible for the alleged difference in treatment. *See Beck v. LaFleur*, 257 F.3d 764, 766 (8th Cir. 2001) (affirming dismissal of § 1983 claim where plaintiff "failed to allege sufficient personal involvement by any of defendants to support such a claim"). Finally, Salinas does not allege that he and the other patient were similarly situated. *See Klinger v. Dep't of Corr.*, 31 F.3d 727, 731 (8th Cir. 1994) ("Absent a threshold showing that she is similarly situated to those who allegedly receive favorable treatment, the plaintiff does not have a viable equal protection claim." (citation omitted)).

### 6.    State Law Claim for Medical Malpractice

Liberally construed, Salinas brings a claim against Hirachen for medical malpractice. (*See* Compl. ¶ 19 (alleging Hirachen "failed in her duties [due] to either indifference or incompetence"). To state a claim for medical malpractice, a plaintiff must plausibly allege: "(1) the standard of care recognized by the medical community as applicable to the particular defendant's conduct, (2) that the defendant in fact departed from that standard, and (3) that the defendant's departure from the standard was a direct cause

of [the patient's] injuries." *MacRae v. Grp. Health Plan, Inc.*, 753 N.W.2d 711, 717 (Minn. 2008) (quoting *Plutshack v. Univ. of Minn. Hosps.*, 316 N.W.2d 1, 5 (Minn. 1982)). Here, Salinas fails to state a claim because his allegation that Hirachen was "incompeten[t]" is conclusory, and he does not allege facts that plausibly support any element of a medical malpractice claim against her. Furthermore, this Court declines to exercise supplemental jurisdiction over this state law claim.

### 7.     Qualified Immunity

Even if Salinas had plausibly alleged a violation of his constitutional rights in any of his claims, the Court finds that Defendants are entitled to qualified immunity.

Qualified immunity shields "government officials performing discretionary functions … from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citation omitted); *accord Brown v. City of Golden Valley*, 574 F.3d 491, 495 (8th Cir. 2009). Thus, the Court must perform a two-part analysis to determine if qualified immunity applies: (1) decide whether the facts show the violation of a constitutional or statutory right; and (2) determine whether that right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Saucier v. Katz*, 533 U.S. 194 (2001)). The Court may analyze either step first. *Id.* at 236. Qualified immunity "is an immunity from suit rather than a mere defense to liability … [and] it is effectively lost if a case is erroneously permitted to go to trial." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). On a motion to dismiss, qualified immunity is upheld "only when the immunity is established

on the face of the complaint." *Hafley v. Lohman*, 90 F.3d 264, 266 (8th Cir. 1996) (internal quotation marks omitted).

Here, Defendants contend that they are entitled to qualified immunity because: (1) Salinas fails to allege facts that plausibly support the existence of any constitutional violations; and (2) even if Salinas plausibly alleges one or more constitutional violations, he has not shown that any alleged right was clearly established at the time of the alleged misconduct, such that a reasonable official would have known the acts were unlawful. (Defs.' Mem. at 25-26; Defs.' Reply in Supp. of Mot. to Dismiss ("Defs.' Reply") [Doc No. 31] at 3-4.) Salinas responds that Defendants should not receive qualified immunity because he "voiced [his] concerns to staff" and made a request to a supervisor. (Pl.'s Rebuttal of Mot. to Dismiss ("Pl.'s Rebuttal") [Doc. No. 30] at 1.)

Salinas has failed to demonstrate that it was clearly established at the time of the incident on August 10, 2020, that Defendants' actions to maintain security at SPRTC were clearly unlawful. Indeed, Salinas has not identified, nor has the Court found, any case law holding that such allegations plausibly allege violations of his constitutional rights—let alone sufficiently definite case law as to put "any reasonable official in the defendant's shoes" on notice. *See Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018). Accordingly, Defendants are entitled to qualified immunity.[8]

---

[8] Because the Court finds that Salinas fails to state a claim and that the Defendants are entitled to qualified immunity, the Court need not address Defendants' argument that Salinas fails to state a claim for punitive damages. (*See* Defs.' Mem. at 26.)

## IV.   CONCLUSION

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss [Doc. No. 20] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: August 25, 2021                          s/Susan Richard Nelson
                                                SUSAN RICHARD NELSON
                                                United States District Judge